UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| RONALD HARDING, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | CIVIL NO. 2:15-cv-00396-NT |
| | ) | |
| MATTHEW LINDAHL | ) | |
| | ) | |
| Defendant | ) | |

**MOTION FOR SUMMARY JUDGMENT**

Defendant Matthew Lindahl moves pursuant to Fed.R.Civ.P 56 and Local Rule 56 for summary judgment on all surviving claims in Plaintiff's Complaint.  The grounds for this motion are fully set forth below.

**Factual Background[1]**

This lawsuit arises from the interactions between Plaintiff and Defendant Matthew Lindahl ("Lindahl"), who is a sergeant in the Rockland, Maine Police Department, on the night of August 2, 2012.   The Knox County Regional Communications Center dispatched Sgt. Lindahl to the McDonald's restaurant in Rockland in response to a 911 call for emergency assistance from a McDonald's employee who reported that three males were fighting in the drive-through lane at the restaurant.

---

[1] The statements in this section are repeated verbatim (but without citation) from Defendant's Statement of Undisputed Material Facts, which is filed simultaneously with this motion and memorandum.  For purposes of this motion only, Defendant accepts as true the facts alleged by Plaintiff in the Complaint and elsewhere and relied upon herein, and Defendant reserves the right to challenge at trial any and all of the facts alleged by Plaintiff.

Sgt. Lindahl's police car was equipped with a dashboard camera positioned to capture and record images and audio to the front of the vehicle, and it recorded both his approach to McDonald's and his interactions with Plaintiff. Both the dashboard camera recording and a transcript of the audio portion agreed-to by both parties are provided to the court as part of this statement of facts, to be considered in their entirety.

Sgt. Lindahl responded to the scene, deploying flashing blue lights and siren, arriving around the same time as Deputy Police Chief Wally Tower ("Tower") arrived in a separate vehicle. Upon arrival, Sgt. Lindahl saw a male he recognized as Plaintiff Ronald Harding, who was standing with a woman facing him, with her hands on him restraining him, as he yelled at a another male standing about 25 feet away; Harding was the only person Sgt. Lindahl saw who was agitated and aggressive. Plaintiff acknowledges that he was agitated when Sgt. Lindahl arrived, talking without stopping and yelling loudly at the other two men that had been involved in an altercation with him prior to the arrival of police. Plaintiff admits that he could not quiet himself and that at the time Sgt. Lindahl arrived he was not sure whether or not he was going to get back into fighting with the other two men.

Sgt. Lindahl exited his car and directed his attention to Plaintiff, while Tower directed his attention to the man at whom Plaintiff had been shouting. Sgt. Lindahl asked Plaintiff what was going on, then took Plaintiff by the elbow and steered him toward the front of his police car, then told him to put his hands behind his back. Approximately one and a half minutes after his arrival, Sgt. Lindahl placed handcuffs on Plaintiff, telling him, "You're being detained until we find out what's going on." Plaintiff replied, "Go right ahead." Sgt. Lindahl continued, "Okay? You're not under arrest."

As seen and heard on the video, two additional officers arrived on the scene and escorted away from Plaintiff the woman who was with him, identified as his mother; Plaintiff went on to describe the preceding events to Sgt. Lindahl.  When Plaintiff reported that he was injured from the altercation with the other two men, Sgt. Lindahl asked him, "Do you need an ambulance for your injuries here tonight?", and Plaintiff replied that he didn't know just yet.

About five minutes after placing handcuffs on Plaintiff, Sgt. Lindahl said to Plaintiff, "I understand that you're upset.  When I got here, you were screaming, mom was holding you back.  And I understand why, okay?"  After Plaintiff responded with, "I'm sorry," Sgt. Lindahl explained, "But that's why you're in handcuffs."  Plaintiff soon after said, "I totally understand, but I was in that mood, where I go in that blackout state, sir.  I'm sorry, but when you got two guys on you, man – Wooo."

After more discussion with Plaintiff and after the police on the scene conferred with the other combatants and with each other about the particulars of the altercation that had taken place, Plaintiff was released from handcuffs approximately 15 minutes after they had been placed on him.

## Argument

Summary judgment is appropriate where the pleadings, depositions, discovery responses and affidavits, if any, establish that there is no genuine issue as to any material fact and that a party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c), *Davidson v. Liberty Mutual Ins. Co.,* 998 F. Supp. 1, 5 (D. Me. 1998).  Moreover, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts ....  Where the record taken as a whole could not lead a rational trier of fact to find for the

nonmoving party, there is no 'genuine issue for trial'." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citation omitted). (quoting *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–587 (1986)).

Plaintiff has previously stipulated the dismissal of various claims and the only remaining claims are, briefly stated: (1) claims pursuant to federal and state statute that Sgt. Lindahl's conduct violated Plaintiff's Constitutional rights to due process, to be free from false arrest, and to be free from the use of excessive force (Counts I, II, and IV); (2) claims for intentional and negligent infliction of emotional distress (Counts V and VI); and (3) claims for punitive damages (all Counts). All of these claims arise from Sgt. Lindahl's conduct toward Plaintiff in the approximately 15 minutes captured on the video and audio recording that is supplied for the court to review.

In this lawsuit there is not and cannot be any dispute of relevant fact. The essential "facts" are contained in the video/audio recording of the conduct at issue. The transcript of the audio portion and the statement of material facts highlighting certain dialogue and certain admissions by Plaintiff provide helpful guideposts, but the court could rule on this case with no record beyond the video/audio recording itself. Whether Plaintiff can prosecute the claims alleged are questions of law this court may decide and is unusually equipped to decide because the recording allows the court to essentially witness the events at issue.

Plaintiff's claims are all legally insufficient because (1) there are no grounds for the Constitutional claims asserted and/or Sgt. Lindahl's conduct is not actionable because it is subject to qualified immunity; (2) there are no grounds for emotional distress claims against law enforcement under these circumstances and/or the emotional distress claims fail because various elements of those claims are not satisfied;

and (3) there is no evidence of the malice necessary to support a claim for punitive damages.

## I.     Plaintiff's federal and state constitutional claims in Counts I, II and IV must fail for failure to state a claim and/or on the basis of qualified immunity.

One can infer a fair synopsis of Plaintiff's surviving claims in Counts I, II and IV as follows:  Plaintiff asserts, pursuant to Section 1983 of the Federal Civil Rights Act and the Maine Civil Rights Act[2], that Sgt. Lindahl's conduct toward him violated his Constitutional right to obtain due process (14th Am.), and also violated his Constitutional rights to be free from false arrest and/or arrest without probable cause and to be free from excessive force (4th Am.).  As detailed below, in turn, each of these claims must fail because there are no grounds for the claims and/or because Sgt. Lindahl's conduct is protected by qualified immunity.

### A.     The claims articulated in Counts I and II that Sgt. Lindahl's conduct violated Plaintiff's due process rights fail because no such claim is cognizable under the circumstances.

In addition to his specific claims that Sgt. Lindahl's conduct constituted a violation of his specific Constitutional rights to be free from false arrest and excessive force (4th Am.), Plaintiff has generally asserted in Counts I and II that that the same conduct by Sgt. Lindahl violated his due process rights.   Because there is a specific Constitutional provision that applies to the complained-of conduct, Plaintiff simply cannot state a due process claim.  The Supreme Court has been loath to expand the 14th Amendment under such circumstances and has denied such claims, as it explained thus:

---

[2] "The Maine Civil Rights Act, 5 M.R.S.A. § 4682 *et seq.*, was patterned after 42 U.S.C. § 1983. Ordinarily, once the § 1983 count is resolved, the Maine Civil Rights Act claim follows course. ... The state standard, like the federal standard, is objective."  *Smith v. Jackson*, 463 F. Supp. 2d 72, 81 (D. Me. 2006) (internal citations and quotations omitted).

-6-

> Because we have always been reluctant to expand the concept of substantive due process, we held ... that where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.

*County of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998) (internal citations and quotations omitted). This logic has been applied by a Federal court in Tennessee that granted summary judgment on a due process claim against police also accused, like Sgt. Lindahl, of violating specific Constitutional rights by use of excessive force and arrest without probable cause:

> Because the Supreme Court has been reluctant to expand the scope of substantive due process, it has explained that, where a particular amendment provides an explicit textual source of constitutional protection against a particular sort of governmental behavior, that Amendment, not the more generalized notion of substantive due process' applies. [Plaintiff]'s claims are based on the Officers' alleged use of excessive force during his arrest. ... Those allegations are covered by the Fourth Amendment's explicit textual protection against unreasonable searches and seizures. Because a specific constitutional provision applies, [Plaintiff] cannot state a substantive due process claim under the Fourteenth Amendment. The Court, therefore, GRANTS summary judgment on [Plaintiff]'s Fourteenth Amendment claims against the Officers and Director Godwin.

*Jones v. Yancey*, 2010 WL 3420460, at *3 (W.D. Tenn. Aug. 27, 2010) (internal citations and quotations omitted). *See also Graham v. Connor,* 490 U.S. 386, 388, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) ('A free citizen's claim that law enforcement officials used excessive force in the course of making an arrest, investigatory stop, or other seizure of his person ....[is] properly analyzed under the Fourth Amendment's objective reasonableness standard rather than under a substantive due process standard.) (internal citations and quotations omitted); and *Rubio v. Skelton*, 2008 WL 3853387, at *10 (D. Or. Aug. 14, 2008) ("Where a particular Amendment provides an explicit textual

source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims. This analytical approach applies where, as here, the claim is grounded in either the First or Fourth Amendment.") (internal citations and quotations omitted).

As in *Jones,* Plaintiff's allegations about Sgt. Lindahl's conduct here are covered by the Fourth Amendment's explicit textual protection against unreasonable searches and seizures, so that Amendment rather than the more generalized notion of substantive due process applies.  Therefore, Sgt. Lindahl is entitled to summary judgment on all claims for violation of due process rights (Count II and ¶¶ 34 and 35 of Count I).

**B.**     **The Fourth Amendment Constitutional claims that Sgt. Lindahl's conduct constituted false arrest and/or excessive force articulated in Counts I and IV fail because the conduct did not, as a matter of law, meet the necessary standard to prosecute such claims and/or because Sgt. Lindahl's conduct was subject to qualified immunity**

Plaintiff's Fourth Amendment rights to be free from unreasonable search and seizure – the rights implicated in the Counts I and IV assertions of false arrest and excessive force – are clearly established rights.  Sgt. Lindahl is entitled to summary judgment on Plaintiff's claims that those rights were violated on account of the police officer not having probable cause to detain him in handcuffs if there is no substantive evidence of deprivation because "the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them." *Napier v. Town of* Windham, 187 F. 3d 177, 182-83 (1st Cir. 1999).  Regardless of whether there was probably cause, Sgt. Lindahl is entitled to summary judgment on grounds of qualified immunity if, after consideration of whether "a similarly situated reasonable official would have understood

-8-

that the challenged action violated the constitutional right at issue," *Smith v. Jackson*, 463 F. Supp. 2d 72, 80 (D. Me. 2006), the court concludes that he would not.

In short, the objective standards are slightly different for finding that there was no deprivation of rights by the officer (*i.e.* that a reasonable police officer would have found the conduct reasonable) or for finding that the conduct, even if it did constitute a deprivation, was protected by qualified immunity (*i.e.* "A state actor may be entitled to qualified immunity for rights-violating conduct as long as he had an objectively reasonable basis for believing that his conduct would not abridge the rights of others." *Iacobucci v. Boulter*, 193 F.3d 14, 23 (1st Cir. 1999)). Under either lens, "the 'objective reasonableness' of the officers' conduct is crucial...." *Napier v. Town of* Windham, 187 F. 3d at 182. In this case, the officer did not violate Plaintiff's rights in detaining him but, even if he did, his actions were objectively reasonable and protected by qualified immunity.

Courts have recognized that the nature of police officer's work means that their actions must be judged in context:

> Because police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation, the reasonableness of the officer's belief as to the appropriate level of force should be judged from that on-scene perspective. We set out a test that cautioned against the '20/20 vision of hindsight' in favor of deference to the judgment of reasonable officers on the scene.

*Smith v. Jackson*, 463 F. Supp. 2d at 78 (citing *Saucier v. Katz*, 533 U.S. 194, 205 (2001).) The *Smith* court went on to explain that this standard dictates that "if an officer reasonably, but mistakenly, believed that a suspect was likely to fight back, for instance, the officer would be justified in using more force than in fact was needed. *Id.* Courts have found this flexibility to be warranted, because of "the fact that police

officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving.  Fluid situations may lead officers to make 'reasonable mistakes' about the legal constraints under which they are operating." *Jones v. Yancey*, 2010 WL 3420460, at *4 (W.D. Tenn. Aug. 27, 2010).

In this case, Sgt. Lindahl used almost no force.  He shouted at Plaintiff, and he handcuffed Plaintiff with Plaintiff's cooperation and submission.  Sgt. Lindahl's conduct responding to the situation that confronted him when he arrived, including handcuffing an agitated and shouting Plaintiff and keeping him restrained for about 15 minutes as the officer conducted his investigation, was objectively reasonable even with the 20/20 vision of hindsight.  From the more forgiving standard of the on-scene perspective, it was eminently reasonable.  A reasonable officer similarly situated would correctly conclude that Sgt. Lindahl's conduct was lawful; Sgt. Lindahl also had an objectively reasonable basis to believe his conduct would not abridge Plaintiff's Constitutional rights.

Qualified immunity affords police officers a great deal of leeway to do their jobs, and it "provides ample protection to all but the plainly incompetent or those who knowingly violate the law."  *Malley v. Briggs*, 475 U.S. 335, 341 (1986).  The requirement to avoid 20/20 hindsight leads to a prevailing view "that not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Jones v. Yancey,* 2010 WL 3420460, at *6 (W.D. Tenn. Aug. 27, 2010).  Sgt. Lindahl's conduct was so mild as to not even require the leeway afforded to all but the plainly incompetent.  His conduct was so far inbounds of any line that might constitute a Constitutional violation that summary judgment on all claims is necessary to afford him the qualified immunity from trial to which he is entitled.

-10-

**II.** **Even without qualified immunity, the claim that Sgt. Lindahl's conduct constituted negligent infliction of emotional distress ("NIED") articulated in Count V fails because no claim for NIED may be brought against police for their conduct while performing their job and because there was no special relationship between Sgt. Lindahl and Plaintiff.**

When Sgt. Lindahl responded to the 911 call reporting a brawl, he was investigating a possible crime. When he arrived on the scene and found Plaintiff in an agitated state, being held back from reengaging with the other combatants, his duty was to protect the public and sort out the situation as efficiently and quickly as possible. Those duties did not include any obligation to tiptoe around the feelings of the suspects. Courts have consistently held that "police officers owe no duty to use reasonable care to avoid inadvertent infliction of emotional distress on the subjects of criminal investigations." *Montero v. Washington State Patrol,* 2007 WL 675855, at *6 (W.D. Wash. Jan. 29, 2007). As the *Montero* court held in dismissing a tort claim against police for NIED, "as a general rule, law enforcement activities are not reachable in negligence." *Id. See also Keates v. City of Vancouver*, 869 P.2d 88, 93 (Wash. Ct. App. 1994) ("Because the utility of the law enforcement function outweighs the criminal suspect's interest in freedom from emotional distress, the law closely circumscribes the types of causes of action which may arise against those who participate in law enforcement activity. As a general rule, law enforcement activities are not reachable in negligence.") Sgt. Lindahl had no duty to Plaintiff to use any care at all to avoid inadvertently inflicting emotional distress so no action for NIED can be prosecuted.

Furthermore, even if negligence claims were available in principle, this claim would still fail because Plaintiff cannot establish a fundamental element necessary to bring an NIED claim since there was no special or unique relationship between Plaintiff

and Sgt. Lindahl.  As the Maine Law Court has explained, "[a]lthough each person has a duty to act reasonably to avoid causing physical harm to others, there is no analogous general duty to avoid negligently causing emotional harm to others."  *Curtis v. Porter*, 2001 ME 158, ¶ 18, 784 A.2d 18, 25.  Other than bystander claims, where one can recover for emotional distress from contemporaneously perceiving a tort committed against a close family member, the Law Court has recognized a duty to act reasonably to avoid emotional harm to others only "in circumstances in which a special relationship exists between the actor and the person emotionally harmed."  *Id.* at ¶ 19, 784 A.2d at 18, 25.  Because the Law Court has recognized no special relationship between a police officer and a criminal suspect, there was no duty.

**III.   Even without qualified immunity, the claim for intentional infliction of emotional distress ("IIED") asserted in Count V fails because Sgt. Lindahl's conduct was not outrageous as a matter of law.**

To withstand summary judgment on the claim for intentional infliction of emotional distress, a plaintiff must present facts tending to show that

> (1) the defendant intentionally or recklessly inflicted severe emotional distress or was certain or substantially certain that such distress would result from [its] conduct;
> (2) the conduct was so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious, utterly intolerable in a civilized community;
> (3) the actions of the defendant caused the plaintiff's emotional distress; and
> (4) the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

*Curtis v. Porter*, 2001 ME 158, ¶ 10, 784 A.2d at 22-23.  It is a matter of law for the court to determine whether "the facts alleged are sufficient to satisfy the elements."  *Champagne v. Mid-Me. Medical Ctr.*, 1998 ME 87, ¶16; 711 A.2d at 842, 847; *See also See Kezer v. Mark Stimson Assocs.*, 1999 ME 184, ¶ 22, 742 A.2d 898, 905.

Plaintiff must satisfy every element, but his claim fails, at a minimum, the second prong of this test regarding the atrociousness of the conduct.  Sgt. Lindahl's conduct was not, as a matter of law, so "extreme and outrageous as to exceed all possible bounds of decency … atrocious, and utterly intolerable in a civilized community." *Davis v. Currier*, 1997 ME 199, ¶ 5, 704 A.2d 1207, 1209 (citation omitted); *See also Loe v. Town of Thomaston*, 600 A.2d 1090, 1093 (Me. 1991).

For example, in *Staples v. Bangor Hydro-Elec. Co.,* 561 A.2d 499 (Me. 1989), the Maine Law Court upheld summary judgment for the defendant on an intentional infliction of emotional distress claim, saying that an employer who humiliated an employee publicly, demoted him without cause, and committed slander *per se* against him fell "far short" of the outer limits of human decency.  *Id*. at 501.

Sgt. Lindahl's actions here fall much farther short of those outer limits:  Sgt. Lindahl's conduct toward Plaintiff when he arrived at the scene of a fight to which he had been summoned with a 911 call was well within the bounds of decency.  Sgt. Lindahl briefly shouted at Harding, an agitated and belligerent combatant who by his own admission could not stop shouting loudly.  Sgt. Lindahl placed handcuffs on Plaintiff for a few minutes while assessing the situation, and Plaintiff was compliant and told Sgt. Lindahl to "go right ahead."  Sgt. Lindahl also inquired about Plaintiff's injuries and offered him medical care.  Sgt. Lindahl asked questions of Plaintiff about what had transpired and listed to his actions.  And as soon as Plaintiff was calm and matters were sorted out, Plaintiff was released from the handcuffs, having been restrained for only about 15 minutes.  This conduct by Sgt. Lindahl does not in any light constitute atrocious, intolerable conduct that is beyond all possible bounds of decency.  Because

there is no evidence of any conduct by Sgt. Lindahl that is utterly intolerable in a civilized community, he is entitled to summary judgment on the claim for IIED.

## IV.   **The claim for punitive damages is subject to dismissal because, as a matter of law, there is no evidence of malice sufficient to support the claim.**

Punitive damages are available only for malicious conduct.  *See Tuttle v. Raymond*, 494 A.2d 1353, 1361 (Me. 1985).  Such malice "must be proven by clear and convincing evidence to support an award of punitive damages."  *Lester v. Powers*, 596 A.2d 65, 72 n. 7 (Me. 1991).  Malice lies in demonstrated ill will (actual malice) or "where deliberate conduct by the defendant, although motivated by something other than ill will toward any particular party, is so outrageous that malice towards a person injured as a result of that conduct can be implied."  *Tuttle*, 494 A.2d at 1361.

*Tuttle* itself illustrates what the Law Court means by "reckless disregard."  In that case the defendant, after having consumed several beers, barreled down a city street at an excessive speed in a 25 m.p.h. zone, ran a red light, and broadsided another vehicle with such force that the impact "sheared the Plymouth in half."  *Id.* at 1354.  The Law Court vacated the award of punitive damages in that case, concluding that even under a less onerous preponderance of the evidence standard, the evidence supported a finding of only reckless disregard for the person in the sheared car and not of malice.  *Id.* at 1354 n.2, 1362.  In other words, such callous behavior was deemed merely reckless, not malicious, and therefore not appropriately punished with punitive damages.

As a matter of law, Plaintiff in this case has no evidence to meet the stringent burden of proof to show that Sgt. Lindahl's conduct rose to the level of actual, or even implied, malice.  In fact, Plaintiff has not described nor does the video reveal any behavior by Sgt. Lindahl that could reasonably be understood to be malicious toward

Plaintiff.   As illustrated in Section II.a. above, Linahl's conduct was not uncivilized, much less malicious.   As a police officer responding to a 911 call with the information that there were three men involved in a fight, Sgt. Lindahl exhibits no malice toward Plaintiff in their 15-minute interaction.   There is no question that Sgt. Lindahl's conduct was far less egregious than the defendant's behavior in *Tuttle*, and even that did not merit an award of punitive damages.   For all these reasons, punitive damages are not available to Plaintiff here and Sgt. Lindahl should be granted summary judgment on punitive damages.

Further, as the District of Maine has held, a claim for punitive damages is not a separate and distinct cause of action.  *See Frank v. L.L. Bean, Inc.*, 352 F. Supp. 2d 8, 13 (D. Me. 2005); see also *Connors v. Town of Brunswick*, 2000 WL 1175641, *11 (D. Me., Aug. 16, 2000).   Rather, as the Law Court has repeatedly noted, an award of punitive damages is a remedy available under certain circumstances when a plaintiff has prevailed on an underlying tort claim and been awarded compensatory damages.  *See Rand v. Bath Iron Works Corp.*, 2003 ME 122, ¶ 15, 832 A.2d 771, 775; *Rutland v. Mullen*, 2002 ME 98, ¶ 17, 798 A.2d 1104, 1111; *DiPietro v. Boynton*, 628 A.2d 1019, 1025 (Me. 1993), so the punitive damages claim is moot if no other tort claim survives.

## Conclusion

This case is unusual and unusually simple because the conduct complained of is captured on video, with audio, so the facts are not only undisputed, they are indisputable.   There is a huge body of case law granting or denying summary judgment in claims against police officers in cases where the officers are alleged to have violated Constitutional Rights.   There are many cases in which conduct much more egregious than Sgt. Lindahl's conduct has been dismissed because courts have decided as a matter

of law that the conduct did not to constitute a violation of rights and/or was protected by qualified immunity.  There are no cases in which conduct as mild as Sgt.Lindahl's has survived summary judgment.  In this case, the court can review the actual conduct on video, in real time, and make a determination as to whether, as a matter of law, Sgt. Lindahl's conduct creates any cognizable claim.

For all the foregoing reasons, Defendant Matthew Sgt. Lindahl respectfully requests that the court grant the motion for summary judgment and dismiss with prejudice all of the pending claims asserted against him by Plaintiff Ronald Harding.


DATED at Portland, Maine this 6th day of September, 2016.

/s/ John S. Whitman
John S. Whitman

/s/ Carol I. Eisenberg
Carol I. Eisenberg
Attorneys for Defendants

Richardson, Whitman, Large & Badger
465 Congress Street / P. O. Box 9545
Portland, ME  04112-9545
(207) 774-7474

**CERTIFICATE OF SERVICE**

This is to certify that on the above date, the Motion for Summary Judgment was electronically filed with the Court using the CM/ECF system, which will send notification of such filing to:

> Eric M. Mehnert, Esquire
> emehnert@hm-law.us
> Cynthia M. Mehnert, Esquire
> cmmehnert@hm-law.us
> Hawkes & Mehnert, LLP
> PO Box 458
> Orono, Maine  04473

/s/ John S. Whitman
John S. Whitman

/s/ Carol I. Eisenberg
Carol I. Eisenberg
Attorneys for Defendants

Richardson, Whitman, Large & Badger
465 Congress Street / P. O. Box 9545
Portland, ME  04112-9545
(207) 774-7474
jwhitman@rwlb.com
ceisenberg@rwlb.com